No. 2931

Second Circuit

NEDDAM LBR. CO. v. BAKER

(May 13, 1927. Opinion and Decree.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Appeal—Par. 625.**

The finding of the trial court on an issue of fact will not be reversed unless manifestly erroneous.
Wood vs. Kansas City Ry. Co., 4 La. App. 23.

2. **Louisiana Digest — Automobiles — Par. 4 (b).**

One traveling on a public highway has the right of way over one entering the highway from a private road.
Landreneau vs. Chapman, 4 La. App. 402.

3. **Louisiana Digest — Automobiles — Par. 4 (b).**

Where the driver of a four-up mule team hitched to a log wagon approaches a public highway at right angles on a private road and observes an automobile moving at a rapid speed on the public highway, it is negligence for the driver of the four-up mule team to enter and block the public highway immediately ahead of the approaching automobile without first making sure that the driver of the automobile is aware of his intention to do so, in time to avoid a collision.
Landrenau vs. Chapman, 4 La. App. 402.
Hudson vs. Jackson Brewing Co., 4 La. App. 549.
Lopez vs. Schique, 114 La. 1004, 38 South. 810.

Appeal from the Third Judicial District Court of Louisiana, Parish of Lincoln. Hon. S. D. Pearce, Judge.

Action by Neddam Lumber Company, Inc., against John A. Baker.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Dhu Thompson, of Ruston, attorney for plaintiff, appellant.

Barksdale, Warren & McBride, of Shreveport, attorneys for defendant, appellee.

STATEMENT OF THE CASE

REYNOLDS, J. This is a suit to recover $400.00 damages for the loss of two mules rendered valueless by being run into by an automobile driven by defendant's minor son.

Defendant filed an exception of no right and no cause of action.

He also specially urged that he was not responsible for the acts of his minor son for the reason that his son did not reside at his home and had not been placed by him under the control of any other person.

He further denied liability and alleged that the negligence of plaintiff's employee was the proximate cause of the accident.

The exception was referred to the merits and, after trial on the merits, judgment was rendered in favor of the defendant and the plaintiff appealed.

OPINION

The first two grounds of defense appear to present merit, but we have not found it necessary to pass upon them for the reason that the case on the merits is clearly with the defendant.

The question to be decided on the merits is, whose fault was the proximate cause of the accident?

Our learned brother of the District Court, Hon. S. D. Pearce, who tried the case and saw the witnesses and heard them testify, in his reasons for judgment in a written opinion said, in part:

"The negro teamster of plaintiff admits that he saw the approaching automobile before he got upon the graveled highway, and virtually admits that he knew there would be a collision unless the driver of the car stopped it before reaching the crossing; at the same time admitting that he could have stopped his team before the collision occurred had he not thought the car would be stopped. The fact that he came upon the graveled highway from a private dirt road imposed upon him the duty of stopping and assuring himself that no vehicle was approaching on the highway near enough at hand to reach the crossing before he could clear it, constitutes such negligence and lack of caution as legally precludes his employer from recovering in this suit."

This finding of fact by the trial court is well supported by the testimony of the driver of plaintiff's mules, James Gardner, who testified, pages 77, 78, 80:

"Q. Where were you when you saw him?
"A. Coming from the hill—we were dumping on the hillside and I was turned and coming down and I saw him.
"Q. And he was running about as fast as he could?
"A. Yes, sir.
"Q. And where was he next?
"A. When the leaders struck the graveled road, I seen him about one-half the distance.
"Q. And you thought you could beat him across?
"A. I figured he would stop.
"Q. You figured he would stop and let you across?
"A. Yes, sir.
"Q. There wasn't anything to keep you from stopping and letting him across, was there?
"A. Anybody else would have thought that he was going to stop.

"Q. Wait a minute—there was nothing to keep you from stopping and letting him by?
"A. There was nothing to keep me from stopping?
"Q. That's the question.
"A. Anybody—looked to me like ——
"Q. Wait a minute—you answer my question.
"A. I could have stopped if I hadn't figured he was going to stop.
"Q. But you could have stopped?
"A. Yes, sir, I guess I could—I figured everybody else would have done the same idea, though—that he would stop or slow down.
"Q. Then when your lead mules got to the edge of the graveled road you figured you could beat him on across, isn't that it?
"A. He was one-half the distance up the road and I figured and I knowed if he stayed on the side of the road that he was on I would have been across.
"Q. If he had stayed on his side?
"A. He would have hit the back end of the wagon I expect."

From all the testimony in the record we are convinced that the judgment of the District Court is right and accordingly it is affirmed.